1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES M. CARSON,<br><br>     Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>     Defendant. | CASE NO. 13-cv-05932 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

  This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos. 15, 16, 19).

  After considering and reviewing the record, the Court finds that the ALJ erred by failing to provide specific and legitimate reasons to discredit the opinion of examining

psychologist Kimberly Wheeler, Ph.D.  Because this error was not harmless, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, JAMES M. CARSON, was born in 1959 and was 47 years old on the alleged date of disability onset of December 8, 2006 (*see* Tr. 169-175, 176-184). Plaintiff left school in the 11th grade, but received a GED (Tr. 51).  Plaintiff has work experience in real estate sales and as a mechanic/manager at an auto repair shop (Tr. 230-32). Plaintiff's last job was selling real estate but ended because he was taking pain killers, which limited his ability to drive (Tr. 56).

According to the ALJ, plaintiff has at least the severe impairments of "lumbar degenerative disc disease with radiculopathy, lumbosacral spondylosis, obesity, and status post right knee surgery (20 CFR 404.1520(c) and 416.920(c))" (Tr. 21).

At the time of the hearing, plaintiff was living alone (Tr. 56).

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 82-87, 88-91). Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on February 1, 2012 (*see* Tr. 36-77). On February 8, 2012, the ALJ issued a written decision in which the ALJ

concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.16-35).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; and (4) Whether or not the ALJ erred by basing his step four and alternate step five findings on a residual functional capacity assessment that did not include all of plaintiff's limitations (*see* ECF No. 15, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1)    Whether or not the ALJ properly evaluated the medical evidence.**

Examining psychologist Kimberly Wheeler, Ph.D. evaluated plaintiff on October 24, 2011 at the request of the Washington State Department of Social and Health Services (Tr. 452-57).  Dr. Wheeler diagnosed plaintiff with panic disorder with agoraphobia and major depressive disorder and measured his GAF score at 50 (Tr. 453). Dr. Wheeler opined that plaintiff would be markedly limited in his ability to

communicate and perform effectively in a work setting with public contact and also in a work setting with limited public contact (Tr. 454).

Both plaintiff and defendant agree that Dr. Wheeler's opinion is contradicted by other opinions in the record (ECF No. 15, pp. 11-12; ECF No. 16, pp. 9-11). When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ gave Dr. Wheeler's opinion little weight because the ALJ found it based on plaintiff's incredible subjective complaints and because it was not supported by the opinions of Dr. Chandler, Dr. Donahue, and Dr. Regets (Tr. 23). The ALJ also noted that "Dr. Wheeler deemed alcohol as noncontributory, apparently based on misinformation." *Id*. Plaintiff argues these were not specific and legitimate reasons to discredit the opinion (ECF No. 15, pp. 11-12). This Court agrees.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing*

*Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

While the ALJ found that Dr. Wheeler's opinion was based on plaintiff's subjective complaints, he provided no support for this finding (Tr. 23).  Further, Dr. Wheeler provided her own observations in support of her opinion noting that she observed plaintiff's symptoms of mood disturbance, decreased energy, and blunted affect (Tr. 453).  She also performed memory testing and a mental status examination (Tr. 456-57).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a

ORDER ON PLAINTIFF'S COMPLAINT - 5

conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3.

All psychological evaluations must rely, at least in part, on plaintiff's subjective statements. However, here Dr. Wheeler's opinion is supported by objective psychological testing and the doctor's clinical observations. Therefore, the ALJ's conclusion that the opinion was based in large part on subjective statements was not supported by substantial evidence and was not a specific and legitimate reason to discredit the opinion.

The ALJ also discredited Dr. Wheeler's opinion noting that it was not supported by the opinions of Dr. Chandler, Dr. Donahue, and Dr. Regets (Tr. 23). As stated previously, when a medical opinion is contradicted, the ALJ is required to provide specific and legitimate reasons, rather than clear and convincing reasons, when discrediting the opinion. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The fact that an opinion is contradicted triggers which standard must be applied. However, the contradiction, on its own, is not a specific and legitimate reason to discredit the opinion. The ALJ must still explain why he gave weight to one opinion over another.

Finally, the ALJ discredited Dr. Wheeler's opinion because "Dr. Wheeler deemed alcohol as noncontributory, apparently based on misinformation." (Tr. 23). The ALJ failed to provide support for this conclusion. The ALJ discussed plaintiff's inconsistent statements regarding alcohol use later in the decision (Tr. 26). However, the majority of

the statements pointed to by the ALJ were from over a year prior to Dr. Wheeler's opinion. *Id*. The only record noted by the ALJ that was somewhat close in time to Dr. Wheeler's opinion was from June 2011 in which plaintiff reported that he had four alcoholic drinks per day, and his doctor advised him to cut back on alcohol use in order to determine if alcohol was causing his tremor (Tr. 459-60). Four months later, plaintiff reported to Dr. Wheeler that his current alcohol intake was minimal because he could not afford it and that he occasionally drank alcoholic beverages (*see* Tr. 454). The ALJ pointed to no contemporaneous records to support a finding that plaintiff was drinking more heavily at the time of Dr. Wheeler's opinion. Further, the ALJ found plaintiff's alcohol abuse was not a severe impairment and failed to provide any information to support a finding that alcohol use contributed to plaintiff's mental impairments (Tr. 21-23). As such, the ALJ's finding that Dr. Wheeler based his opinion on misinformation is not supported by substantial evidence in the record. Thus, the ALJ erred by failing to provide legally sufficient reasons to discredit Dr. Wheeler's opinion.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))

(other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).  Here, the ALJ found plaintiff's mental impairments to be non-severe and included only minimal non-exertional limitations into his residual functional capacity ("RFC") finding (Tr. 21, 23).  As such, had Dr. Wheeler's opinion been accorded weight, the disability determination may very well have changed.  Thus, the ALJ's error was not harmless.

**(2)    Whether or not the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**(3)    Whether or not the ALJ properly assessed plaintiff's residual functional capacity and  whether or not the ALJ erred by basing his step four and alternate step five findings on a residual functional capacity assessment that did not include all of plaintiff's limitations.**

The ALJ's RFC finding and step four and step five determinations were based in part on the ALJ's erroneous evaluation of the medical evidence.  Because the Court has already determined this case should be reversed and remanded for further consideration, upon remand plaintiff's RFC and his ability to perform work in the national economy should be assessed anew.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 11th day of August, 2014.

_____
J. Richard Creatura
United States Magistrate Judge